UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

|  |  |  |
|---|---|---|
| LISA M. MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3224 (AW) |
| | ) | |
| v. | ) | |
| | ) | |
| CAMBRIDGE INTEGRATED SERVICES GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CAMBRIDGE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S EXPERT REPORT

Defendant Cambridge Integrated Services Group, Inc. ("Cambridge"), by its attorneys, Littler Mendelson, P.C., respectfully submits the following reply in support of its Motion to Strike Plaintiff's Expert Report ("Motion").

## INTRODUCTION

Plaintiff's Opposition to Cambridge's Motion to Strike ("Opposition") does nothing to refute or justify the facts demonstrating Plaintiff's failure to timely comply with the Court's Scheduling Order and Rule 26(a)(2), and is rife with factual misstatements. The simple facts are that Plaintiff waited until **169** days after the deadline for her expert disclosures expired and **104** days after the deadline for her expert rebuttal report, before she produced her expert's report on the last day of discovery – without ever seeking relief from the Court's Scheduling Order. Plaintiff has offered no justification for her delay or her complete failure to seek relief from the Court's Scheduling Order. Plaintiff's unilateral delay prejudiced Cambridge's ability both to file

1

its original expert report and to conduct discovery relating to Plaintiff's theory of liability and damages, as articulated in the "report" of Mr. Martorelli. Moreover, Plaintiff has failed to substantively rebut Cambridge's arguments that the contents of Plaintiff's expert report are improper and do not meet the standards for admissibility. Thus, Plaintiff's expert report should be stricken and Joseph Martorelli should be precluded from testifying at trial.

## LEGAL ARGUMENT

### A. Plaintiff's Interrogatory Answer Does Not Constitute a Rule 26 Disclosure

Rule 26(a)(2) is clear and unambiguous regarding what must be contained in expert disclosures. As explained in Cambridge's Motion, Rule 26(a)(2) specifically requires a party's expert disclosure to include "a written report – <u>prepared and signed by the witness</u>" and the report "<u>must</u>" contain: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an exert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(2)(B) (emphasis added).

Plaintiff argues that her answer to an interrogatory seeking the identity of every expert Plaintiff expects to call as trial complies with the requirements of Rule 26(2)(B) and constitutes a valid expert disclosure. (Opposition, p. 3). Plaintiff is wrong, and her purported "disclosure" falls woefully short of the requirements of Rule 26. First, Plaintiff's interrogatory answer is clearly not a written report prepared and signed by her expert witness, as is required under Rule 26. Second, contrary to Plaintiff's allegation, her answer does not "provid[e] all of the

2

information required by Rule 26." (Opposition, p. 3). Plaintiff's interrogatory answer did not provide a complete statement of all of the opinions Mr. Martorelli would express or the basis for any opinions. Indeed, the answers contained **no** opinions. Moreover, Plaintiff's answer states that Mr. Martorelli would provide opinions regarding only:

> 1) the "revenue invoiced by Cambridge" for each of the Accounts identified in Plaintiff's pleadings;
>
> 2) the "revenue received from Cambridge" for each of the Accounts identified in Plaintiff's pleadings; and
>
> 3) "the extent to which the revenue invoiced as identified above would be subject to a 5%, 7% or 9% commission..." rate set forth in the commission plans at issue in this case.

(*See* Ex. 1 of Cambridge's Motion). Mr. Martorelli's "report" is not limited to the three topics identified in Plaintiff's answer but also contains his opinions regarding:

> 1) the total revenue invoiced to BrickStreet, including revenue invoiced by third-parties (p. 3-4);
>
> 2) whether revenue invoiced by the vendors who provided IME, FCM, SIU, and subrogation services to BrickStreet is subject to or exempt from commissions (p. 4-6);
>
> 3) whether $150,000 per account commission cap applies on a per customer or per line of business basis (p. 6-7);
>
> 4) whether there are commissions owed to Plaintiff (7-8);
>
> 5) the nature of Cambridge's contractual relationships with its third-party vendors (p. 4-5); and
>
> 6) the proper interpretation of the commission plans at issue in this case (p. 6-7).

(*See* the Expert Report of Joseph Martorelli attached hereto as Ex. 1).

Plaintiff's interrogatory answer also did not include information regarding data or other information considered by Mr. Martorelli in forming his opinions, a list identifying the exhibits that will be used to summarize or support his opinions, or a statement of the compensation to be

3

paid for his study and testimony in the case. Thus, Plaintiff's contention that she properly disclosed her expert witness prior to filing her untimely witness disclosure on September 8, 2009 is baseless.

### B. Plaintiff Has Failed To Offer A Justification For Her Delay In Making Her Expert Disclosure

Plaintiff attempts to justify her untimely designation by accusing Cambridge of wrongfully withholding discovery information and documents. Plaintiff's argument is flawed on several grounds and is nothing more than a thinly-disguised effort to circumvent this Court's Scheduling Order and to prejudice Cambridge.

First, Cambridge did not wrongfully withhold any discovery information or documents. Cambridge has timely responded to Plaintiff's discovery requests and supplemented its answers and responses as it obtained information responsive to Plaintiff's requests. It should be noted that Cambridge submitted its expert report on May 13, which addressed the IME, FCM, SIU and subrogation services provided to BrickStreet using information that was in the possession of both parties as of that time. Plaintiff could have used that information. In addition, Plaintiff's own original document production included an email from Coventry to Cambridge reflecting the IME and FCM billings by Coventry. Plaintiff certainly could have used that information. Moreover, since she had identified these three areas as "deals" or "accounts" as to which she was making a claim, she could have subpoenaed whatever records she needed related to billings by third-party service providers (Coventry and MJM) from those service providers or from her former customer, BrickStreet or the West Virginia Office of the Insurance Commissioner.[1] Cambridge did not have separate records because the billings which were sent to it as claims <u>administrator</u>

---

[1] Indeed, Plaintiff issued a subpoena *duces tecum* to BrickStreet on April 29, 2009. Cambridge did not learn of the subpoena or receive copies of the documents produced by BrickStreet on May 22 until Plaintiff's counsel used the BrickStreet documents during a deposition on June 16, 2009.

4

for BrickStreet were paid from the BrickStreet claims fund, so BrickStreet had the records. Thus, if Plaintiff's expert needed more information to opine about the very "accounts" Plaintiff has placed at issue, Plaintiff could have and should have gotten the information from the source. Further, even if Cambridge failed to provide discovery, which it did <u>not</u> do, such delay does not excuse Plaintiff's failure to timely make her expert disclosure. *See, Commerce Benefits Group, Inc. v. McKesson Corp.*, 2008 U.S. Dist. LEXIS 15181, *9-10 (N.D. Ohio, 2008), *aff'd Commerce Benefits Group, Inc. v. McKesson Corp.*, 2009 U.S. App. LEXIS 10870 (6th Cir. 2009) (denying untimely motion for extension of time and finding "([t]he Plaintiff may not withhold its expert report until discovery is substantially completed and its expert has been able to review all possibly relevant documents. If additional discovery suggests the expert report be amended, the Plaintiff can move the court for leave to file such an amended report with specific justification for the amendment.").[2]

Second, Plaintiff's argument also misses the mark because it fails to provide any explanation for why she waited until September 8 to disclose Mr. Martorelli's opinions regarding topics completely unrelated to the revenue invoiced by the third-party vendors who provided services to BrickStreet. Plaintiff's proffered justification for her delay relates only to Mr. Martorelli's ability to determine the revenue invoiced by third-party vendors. Plaintiff proffers *no explanation* for her failure to timely disclose Mr. Martorelli's opinions regarding topics having nothing whatsoever to do with the revenue invoiced by third-party vendors.[3] For example, in his report, Mr. Martorelli's presents his interpretation of the commission plans at

---

[2] A copy of the district court's unreported decision is attached hereto as Ex. 2.
[3] For example, Plaintiff asserts that Mr. Martorelli does not dispute Cambridge's expert's opinions regarding the amount of commissions paid to Plaintiff attributable to the BrickStreet account. (Opposition p. 3). The information upon which Cambridge's expert based his opinions and calculations, including payroll information regarding the commissions paid to Plaintiff, was produced as part of Cambridge's initial production, and therefore was available to Mr. Martorelli long before September 8.

5

issue in this case, including application of the annual per account commissions cap and the scope of revenue subject to commissions under the plans. (*See* Ex. 1 at p. 4-6). Mr. Martorelli certainly had access to the commission plans before the March 23 deadline for Plaintiff's expert disclosures; however, Plaintiff offers no explanation, much less justification, for her failure to timely disclose Mr. Martorelli's opinions. If Plaintiff believed she needed additional time or discovery in order to make her disclosure, her remedy was to seek relief from the Court's Scheduling Order, not to make a unilateral decision to disregard the deadlines established by the Court. In the alternative, Plaintiff should have timely submitted her expert report and, if appropriately justified (which she has not done), later supplemented her disclosure pursuant to Rule 26(e)(2). Plaintiff instead elected to ignore the deadline for her disclosures. Plaintiff has failed to offer any substantial justification for her failure to comply with the Scheduling Order or the disclosure requirements of Rule 26(a)(2), and her expert report should be stricken in accordance with Rule 37(c) of the Federal Rules of Civil Procedure's mandatory sanctions.

### C. Defendant *Has Been* Prejudiced by Plaintiff's Failure to Timely Make Her Expert Disclosures

Contrary to Plaintiff's contention, Cambridge has been prejudiced by Plaintiff's untimely disclosure. As detailed above, the topics addressed and the opinions expressed in Mr. Martorelli's "report" go far beyond the limited topics identified in Plaintiff's interrogatory answer. This is exactly the surprise and prejudice Rule 37(c)(1) is intended to prevent. In support of her argument that Cambridge will not be prejudiced if Mr. Martorelli's report is not stricken and he is permitted to testify as an expert, Plaintiff argues there is no prejudice with respect to Mr. Martorelli's opinions regarding certain of the BrickStreet projects for which Plaintiff is seeking commissions because Mr. Martorelli's report is consistent with Cambridge's report. Plaintiff's argument is again flawed. Plaintiff's delay has also denied Cambridge the

6

right to ascertain the amount of damages Plaintiff is claiming and the basis therefore, throughout discovery. Moreover, had Plaintiff timely made her expert disclosure and produced Mr. Martorelli's report by the March 23 deadline, Cambridge could have asked questions during Plaintiff's deposition regarding the report. Instead, Plaintiff waited until the last day of discovery to submit her expert report. In addition, the report of Cambridge's expert, Bruce Dubinsky, sets forth Mr. Dubinsky's opinion with respect to several different scenarios involving various assumptions. Mr. Dubinsky did <u>not</u> conclude that Plaintiff is owed $35,413 as Plaintiff maintains. (Opposition, p. 3). Plaintiff also overlooks the obvious fact that Cambridge had no way of knowing that Mr. Martorelli agreed with certain of Mr. Dubinsky's determinations until Mr. Martorelli's report was finally produced on September 8. Accordingly, in light of Plaintiff's failure to adhere to discovery deadlines, Plaintiff's expert and his expert report should be stricken and Plaintiff should be barred from utilizing expert testimony in this case.

      **D.**    **<u>Mr. Martorelli's Report Should Be Stricken As Unreliable</u>**

As explained in Cambridge's Motion, Plaintiff's expert report does not meet the standards for admissibility and does nothing to assist the trier of fact. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Contrary to Plaintiff's representation, Cambridge's Motion is not based merely on objections to Mr. Martorelli's assumptions, but also on the lack of reliability of Mr. Martorelli's opinions themselves. (Opposition, p. 6-7; Motion p. 5-6).

Plaintiff's Opposition fails to address, much less counter, Cambridge's arguments that Mr. Martorelli's opinions regarding the interpretation of the commission plans at issue and the nature of the contractual relationships between Cambridge and its vendors are not based on specialized knowledge and are beyond his area of expertise and qualifications, and therefore

7

cannot be considered proper expert testimony. *Scarff Bros., Inc. v Bischer, Farms, Inc.* 546 F Supp 2d 473 (E.D. Mich. 2008) (Veterinarian was not permitted to testify as expert witness offering accounting of damages or of cattle missing because he had not been timely disclosed as expert witness under Fed. R. Civ. P. 26(a)(2)(C) and because much of his testimony could not have been received under Fed. R. Evid. 702; although he had extensive expertise as veterinarian, he did not establish his expertise in fields of economics or accounting). Plaintiff also fails to rebut Cambridge's argument that Mr. Martorelli's report impermissibly contains ultimate conclusions and is devoid of any meaningful discussion regarding the methodology employed in reaching his proffered opinions and, therefore, is fundamentally unreliable. As explained in Cambridge's motion, Plaintiff's expert report and the opinions expressed therein are wholly unreliable and should be stricken.

## CONCLUSION

For all of these reasons, as well as those discussed in Cambridge's Motion, Cambridge respectfully requests that this Court strike Plaintiff's expert report, and preclude Mr. Martorelli from testifying on the issues contained therein.

Dated: October 20, 2009          LITTLER MENDELSON, P.C.

By: __s/ Thomas J. Flaherty_____
    Thomas J. Flaherty (Fed. Bar No. 16582)
    tflaherty@littler.com
    Lindsey H. McGinnis (admitted *Pro Hac Vice*)
    lmcginnis@littler.com
    1650 Tysons Blvd., Suite 700
    McLean, Virginia  22102
    703.442.8425  Telephone
    703.442.8428  Facsimile

    *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2009 a copy of the foregoing Reply (corrected) was served via the Court's electronic filing system and First Class Mail upon the following:

>Christopher L. Rogan, Esq.
>James P. Campbell, Esq.
>Danell P. Dean, Esq.
>Campbell Miller Zimmerman, P.C.
>19 East Market Street
>Leesburg, Virginia  20176

          s/ Lindsey H. McGinnis
          Lindsey H. McGinnis